**UNITED STATES of America**

v.

**Siddell SIPES.**

**Crim. No. 15809.**

United States District Court
E. D. Tennessee, N. D.
June 20, 1955.

John C. Crawford, Jr., U. S. Dist. Atty., Knoxville, Tenn., for plaintiff.

William E. Badgett, Knoxville, Tenn., for defendant.

ROBERT L. TAYLOR, District Judge.

Presented here is whether evidence obtained by search of defendant is admissible. On the date of defendant's arrest, two federal officers were proceeding in an automobile along a public street in the City of Knoxville, when the driver saw and recognized defendant, then a pedestrian crossing the street. Defendant had a reputation with this officer of being a bootlegger of tax-unpaid whiskey.

When the officer saw defendant, the latter was wearing an Army-type blouse or jacket, a garment roomy enough to enclose objects of some size in addition to the body of the wearer. At the time in question, the jacket was somewhat disfigured in appearance, suggesting that it did, indeed, enclose more than the wearer. Suspecting defendant of having tax-unpaid whiskey concealed inside the jacket, the officer stopped his automobile and took after him.

In a place adjacent to or near Drew's Alley, the officer caught defendant and in an instant either arrested and searched him or searched and arrested him. At any rate, found concealed within the roomy interior of the jacket were two half-gallon jars of whiskey, tax unpaid. Motion was made to suppress this evidence on the ground that it was illegally obtained.

If search preceded the arrest, a federal question is presented as to its legality, the result hinging on whether or not the search was reasonable within the meaning of the Constitution of the United States. What is reasonable means something quite different from the result of what goes on in an officer's mind. In the present situation two known facts led to the conclusion that defendant was carrying distilled spirits. He had a reputation in his neighborhood of being a bootlegger. When seen by the officer, his blouse looked like it had something in it besides the defendant. Therefore, the officer concluded he was carrying tax-unpaid whiskey.

In the minds of reasonable men, this may not have been an unreasonable conclusion, considered purely as a process of thought. Yet the range of speculation in such circumstances is rather broad. The bulge in the jacket could have been due to the presence of objects other than whiskey containers. Although defendant reputedly was a bootlegger, this could have been one of his honest days. But in a balance of probabilities, at least in the officer's mind, he was plying his illegal trade. Any doubts that may have existed were no deterrents. When an officer is driving along a public street and sees a known bootlegger with a bulge in his jacket, there is one sure way to find out the truth. That is to run the suspect down and search him. Anyhow that was the *modus operandi* in this instance.

Reasonable search and reasonable mental concept are different things. Thoughts alone react only upon the thinker. But search of the person of another subjects him to an indignity which is justifiable only when it is a fair and proper procedure as viewed not by the officer or the victim, but by the impartial judgment of reasonable men.

By the Fourth Amendment, the individual right of personal, bodily privacy is not placed in a secondary or subordinate position. On the contrary, it heads the list. That Amendment provides in part, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, * * *." In Harris v. United States, 331 U.S. 145, at page 150, 67 S.Ct. 1098, 1101, 91 L.Ed. 1399, the court said: "This Court has consistently asserted that the rights of privacy and personal security protected by the Fourth Amendment '* * * are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen * * *'. Gouled v. United States, 1921, 255 U.S. 298, 304, 41 S.Ct. 261, 263, 65 L.Ed. 647."

With reference to the Fourth Amendment, the court in McDonald v. United States, 335 U.S. 451, at page 453, 455, 69 S.Ct. 191, 192, 93 L.Ed. 153, said: "This guarantee of protection against unreasonable searches and seizures extends to the innocent and guilty alike. It marks the right of privacy as one of the unique values of our civilization and, with few exceptions, stays the hands of the police unless they have a search warrant issued by a magistrate on prob-

able cause supported by oath or affirmation. * * * The presence of a search warrant serves a high function. Absent some grave emergency, the Fourth Amendment has interposed a magistrate between the citizen and the police. This was done not to shield criminals nor to make the home a safe haven for illegal activities. It was done so that an objective mind might weigh the need to invade that privacy in order to enforce the law. The right of privacy was deemed too precious to entrust to the discretion of those whose job is the detection of crime and the arrest of criminals."

■ Invasion of privacy without a search warrant is permissible in the presence of "some grave emergency," McDonald v. United States, supra, or in "exceptional circumstances," Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. But the burden is on those who made the search without a warrant to establish the exceptional circumstances or the grave emergency. McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153. The grave emergency presented by a pedestrian in a bulging jacket, even though reputedly a bootlegger, is hidden by the obscurity of conjecture and the intervening sanctity of individual freedom. Nor were the circumstances of such exceptional urgency that the man must be searched on mere suspicion. "We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigences of the situation made that course imperative." McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153.

■ One other situation remains wherein search without a warrant is sanctioned, namely, when it is made incident to a lawful arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145. For the reason that an arrest may have preceded the search here, inquiry is made as to whether the arrest, if so made, was legal.

■ Unlike search without a warrant, arrest without a warrant in the absence of a federal statute is to be tested by state law. United States v. Burchfield, D.C., 87 F.Supp. 805, and authorities therein cited. In this state, the law on the subject is in the form of a statute.

Code section 11536 provides: "An officer may, without a warrant, arrest a person:

"(1) For a public offense committed or a breach of the peace threatened in his presence.

"(2) When the person has committed a felony, though not in his presence.

"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"(4) On a charge made, upon reasonable cause, of the commission of a felony by the person arrested."

In subsections (2), (3) and (4), the language clearly contemplates some definite felony for which the person arrested could be brought to trial. The man in the bulging jacket was not wanted for some felony that had theretofore been committed. He was wanted because he had the reputation of being a feloniously inclined person and at the moment bore outward indications of being in the act of committing a public offense or a breach of the peace in the officer's presence. So narrow is the line of distinction between public offense and breach of the peace that no practical purpose could be served by trying to distinguish them.

■ Subsequent events proved that defendant was committing an offense in the officer's presence. But, as in the case of an illegal search, an illegal arrest is not made legal by what it unearths. Epps v. State, 185. Tenn. 226, 205 S.W. 2d 4; Carroll v. State, 189 Tenn. 351, 225 S.W.2d 532.

It is not the fact subsequently disclosed that an offense was being committed in the officer's presence that makes the arrest legal. The officer must have known that the offense was being committed in his presence. In Epps v. State, 185 Tenn. 226, at page 230, 205 S.W.2d 4, at page 6, the court said: "In the instant case, all we have is (1) the reputation of the accused and (2) that he was driving his car from the direction of a neighborhood the officers were informed he got whiskey. Clearly these facts alone do not justify an arrest and search without a search warrant."

In McCanless v. Evans, 177 Tenn. 86, 146 S.W.2d 354, a valid arrest was made by officers for an offense committed in their presence. At page 91 of 177 Tenn., at page 356 of 146 S.W.2d the court said: "Massa v. State, 159 Tenn. 428, 429, 19 S.W.2d 248, 249, is in point, holding that 'where an officer is apprised by any of his senses that a crime is being committed, it is being committed in his presence, so as to justify an arrest without warrant.'"

In Hughes v. State, 145 Tenn. 544, 238 S.W. 588, 20 A.L.R. 639, the court in upholding an arrest, stated the law as follows: "It does not follow from the fact that evidence discovered upon the arrest proved the commission of an offense, that the arrest itself was authorized. Under our statute * * * an officer may without a warrant arrest a person for a public offense committed in his presence. That means that the offense, or the facts constituting the offense, must be revealed in the presence of the officer. An officer cannot lawfully arrest a person without a warrant and search his person for the purpose of ascertaining whether or not he has violated the law. Even if the person arrested were in fact violating the law, the offense was not in legal contemplation committed in the presence of the officer, and such an arrest is unauthorized, where the facts constituting the offense are incapable of being observed or are not observed by the officer." 145 Tenn. 569, 238 S.W. 595.

[6] All the officer observed in the present case was a man crossing a public street, wearing a jacket which appeared to have something inside in addition to the wearer. The officer was interested not in public offenses in a general sense, but in an offense against the federal internal revenue laws, specifically traffic in tax-unpaid whiskey. All the evidence he had that such offense was being committed in his presence was a bulge in the pedestrian's jacket. The only one of his five senses relied on to detect crime in the given case at the given moment was his sense of sight. What was seen was a bulge in a jacket. The cause of the bulge was not revealed. It could have been a live pig, picnic ham, loaf of bread, or any one of countless other things. Yet what was hidden behind the impenetrable opacity of the jacket and denied to the sense of sight was imaginatively revealed not merely as whiskey, but as whiskey of the tax-unpaid variety. Not in the officer's sensory presence, but only in his metaphysical presence, was a public offense being committed. By the present state of the law it is only the former which lends validity to an arrest without a warrant.

That evidence illegally obtained by federal officers is not admissible against the accused, is well settled. United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652. "The Government cannot violate the Fourth Amendment—in the only way in which the Government can do anything, namely through its agents—and use the fruits of such unlawful conduct to secure a conviction. Weeks v. United States, supra. Nor can the Government make indirect use of such evidence for its case, Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, or support a conviction on evidence obtained through leads from the unlawfully obtained evidence, cf. Nar-

done v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307. All these methods are outlawed, and convictions obtained by means of them are invalidated, because they encourage the kind of society that is obnoxious to free men." Walder v. United States, 347 U.S. 62, 64–65, 74 S.Ct. 354, 356, 98 L.Ed. 503.

Because of the principles declared in the cases herein cited, the evidence obtained by the officer is inadmissible against the defendant. Accordingly, an order will be prepared, sustaining the motion to suppress it. As evidence otherwise obtained and presented is insufficient for a conviction, the order will be one to suppress and dismiss.