**UNITED STATES of America**
v.
**Kyle VALENTINE.**
**Crim. No. 6473.**

United States District Court
E. D. Tennessee,
Northeastern Division.
March 16, 1962.

---

1.  10 N.Y.2d 271, 219 N.Y.S.2d 254, 176 N.E.2d 826 (1961).

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for plaintiff.

Fred L. Myers, Newport, Tenn., for defendant.

NEESE, District Judge.

Four investigators of the Alcohol and Tobacco Tax Unit of the Treasury Department were proceeding along a city street in Newport, Tennessee, about 5:30 o'clock, a. m., on August 14, 1961. Two of these agents had received information from separate sources about ten to fourteen days earlier that an old-model Chevrolet automobile, bearing Unicoi County,

Tennessee, license plates, was being used by an unidentified person or persons in hauling illicit whiskey from Cosby to Johnson City by the Houston Valley route early in the mornings. Newport is on such route; however, the government agents were not in Newport for the purpose of investigating the validity of the information received, but on another mission.

These officers overtook on the street a slowly moving 1941-model green Chevrolet automobile bearing 1961 Tennessee license plates No. 59–2455, the prefix "59" indicating the license plates had been issued by the Unicoi County Court Clerk's office. The rear-end of this automobile was "sitting low" on the back axle, according to the testimony of the officers. This abnormal posture of the automobile, plus the approximation of the vehicle being observed to the description received from the aforesaid informants, caused the officers to stop the vehicle. Until the vehicle was stopped and its driver detained, none of the officers even knew the identity of the driver. The officers neither saw nor smelled evidence of intoxicating liquors.

After the officers stopped the car and restrained the driver, they took the car keys, unlocked and opened the trunk of the vehicle. Just as the key was being inserted in the trunk lock, the defendant Valentine fled the scene; however, the officers testified they would have searched the car regardless of whether the defendant remained or fled. In the trunk of the car, the officers found sixty-six (66) gallons of nontax-paid whiskey.

The defendant Valentine, through court-appointed counsel, moved to suppress the evidence thus offered on the ground that it was obtained by means of an illegal search and seizure in violation of the rights guaranteed the defendant by the Fourth Amendment to the Constitution of the United States.

Counsel have submitted this case on the question of the legality of the search and seizure involved. If the Court sustains the motion to suppress the evidence

obtained, the prosecution must fail; if the motion is overruled, the defendant Valentine admits his guilt. The crucial question is whether there was probable cause for Valentine's arrest and the subsequent search and seizure of the automobile he was driving at that time.

■ Officers may not arrest on mere suspicion but only on probable cause. Mallory v. United States, (App.D.C.1957) 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

■ "* * * (T)he true rule is that if the search and seizure without a warrant are made on probable cause, that is, upon a belief, reasonably arising out of the circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid." Carroll v. United States, (1946), 267 U.S. 132, 147, 149, 45 S.Ct. 280, 283, 69 L.Ed. 543.

■ Where an arrest without a warrant occurs when officers have no probable cause for the arrest, then nothing which occurs afterward can make the arrest lawful or justify the search as its incident. Rios v. United States, (Cal. 1960) 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed. 2d 1688.

■ "Probable cause" justifying an arrest without a warrant exists if the facts and circumstances known to the officers would warrant a prudent man of reasonable caution in believing that the offense had been committed. Id.

The Court is of the opinion that the facts within the knowledge of the officers were insufficient to lead a reasonably discreet and prudent man to believe that illicit liquor was being transported in the 1941-model green Chevrolet automobile, and further that the facts were insufficient to induce an ordinarily prudent and cautious person, under the circumstances, to believe in good faith that the defendant Valentine had committed a felony so as to constitute probable cause for his arrest without a warrant.

■ The information the officers had received several days earlier that an old

model Chevrolet automobile with Unicoi County, Tennessee, license plates was being used to haul whiskey along a certain route between two points early in the mornings amounted to no more than grounds for suspicion of *all* such vehicles. Wisniewski v. United States, C.A.6th, 47 F.2d 825, 826. The Court takes judicial notice of the fact that there are many automobiles operating in the Cocke County, Tennessee, area bearing Unicoi County, Tennessee, license plates and that there are many old model Chevrolet automobiles on the road. Such hearsay information did not give these law enforcement officers the right to stop and search every automobile seeming to fit that general description and traveling along the streets and highways. Brinegar v. United States (1949), 338 U.S. 160, 177, 69 S.Ct. 1302, 93 L.Ed. 1879; Carroll v. United States, supra.

The information which had come to the officers concerned only an old-model Chevrolet automobile, and they had not received any "tip" on the possible or probable identity of the driver of such a vehicle. The officers who testified did not know Valentine, either personally or by reputation, as a hauler of untaxed whiskey. Nor did any of the officers know the identity of the driver of the car until after it had been stopped. Neither the car nor the driver were recognized, from the recent personal contact and observation of the officers, as having been lately engaged in illicit liquor dealings. While Cocke County, Tennessee, is widely reputed as a known source of liquor supply, there was no reasonable way for the officers to have anticipated the automobile's possible origin or that its probable destination was an illegal market for distilled spirits. The instant situation, therefore, is easily distinguishable on the material facts and circumstances involved in the Carroll and Brinegar cases, supra. There was no crime being committed in the presence of the officers. All they had supporting their probability of cause was the hearsay information two of them had received many days earlier and their observation that the automobile seized was sitting heavily on its rear springs.

■ The Court is not persuaded by this latter-mentioned observation. The officers testified that sixty-six gallons of whiskey in glass containers will weigh perhaps 625 to 700 pounds—the approximate weight of three hefty adults. Other articles than contraband liquor in the trunk of the automobile, such as several sacks of dairy feed, a legal cargo, could have produced the identical physical appearance the officers observed. Under the circumstances of the moment the Court concludes that there was not here probable cause for the arrest, search and seizure in the eyes of reasonable, cautious and prudent peace officers. United States v. Hinton, D.C.D.C., 1958, 161 F. Supp. 266, affirmed 104 U.S.App.D.C. 324, 262 F.2d 36, certiorari denied 359 U.S. 943, 79 S.Ct. 726, 3 L.Ed.2d 677.

■ The search and seizure might have been validated after the officers stopped the vehicle and the defendant Valentine had fled the scene, had the officers, at that point, obtained a search warrant before opening the trunk of the automobile. Flight indicates a consciousness of guilt leading reasonable, cautious and prudent peace officers to harbor probable cause to obtain a warrant to search. But these officers admit that they intended to search whether the defendant Valentine remained or fled. They seem to have assumed erroneously that any traveler along the public streets and highways may be stopped and searched on hearsay information and mere suspicion. Cf. Brinegar v. United States, supra, 338 U. S. at page 177.

■ The Fourth Amendment to our federal Constitution must be given a broad and liberal construction in favor of the individual citizen in order to thwart illegal invasion of the constitutional safeguard provided to the end that the Amendment, while it may at times shield the guilty, shall always protect the innocent. Gilliam v. United States, C.A. 6th, 189 F.2d 321, 328 (dissenting opinion).

This motion was presented by Court-appointed counsel following the defendant's execution of an affidavit of indigence and request for counsel. The Court wishes to thank Fred Myers, Esquire, counsel for the defendant, for his vigorous representation of his client's rights.

The defendant's motion to suppress the Government's evidence obtained through an illegal search is granted; and, under the concession of counsel, supra, the defendant Kyle Valentine is to be released from custody. Counsel for the defendant will prepare and submit an appropriate Order.