**UNITED STATES of America**

v.

**Willard Bigon COOK and William Harold Young.**

**Crim. No. 6606.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Oct. 12, 1962.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., David Smith, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

John F. Dugger, Morristown, Tenn., for defendants.

NEESE, District Judge.

These defendants were jointly indicted under a two-count indictment charging in count one "possessing" and in count two "removing and concealing" tax-unpaid whiskey. They moved to dismiss the second count on the ground that said count does not charge an offense. Finding that the second count contains all the elements of the statutory offense intended to be charged by the Grand Jury and that same sufficiently apprised the accused what they should be prepared to meet so that a judgment herein would be a bar to further proceedings against them for the same offense, the Court denied the defendants' motion to dismiss said count. Hughes v. United States, C.C.A.6th (1940), 114 F.2d 285.

The Court took under advisement until now the defendants' further motion to suppress for the use as evidence two (2) cases containing six (6) gallons, each, of contraband tax-unpaid whiskey, allegedly obtained by an unlawful search and seizure, on the ground that the property was seized illegally without a warrant. Rule 41(e), Federal Rules of Criminal Procedure. The Court received all the evidence necessary to a decision on the said motion preliminary to the trial.

The defendants then waived a trial by jury in writing with the approval of the Court and the consent of the government.

Rule 23(a), Federal Rules of Criminal Procedure.

There is little dispute about the essential facts: Revenue agents of the federal government had received complaints from local police in Johnson City, Tennessee that the defendant Cook was dealing in tax-unpaid whiskey at 120 Garden Drive in that municipality. Cook lived at this address and sold both bonded and tax-unpaid whiskey there "by the drink". The defendant Young was Cook's helper in this unlawful enterprise.

The revenue agent-in-charge in the area engaged Walter Hodge, a person of the same race as the defendants, as an undercover operative to assist in the apprehension of Cook. Hodge went to Cook's place and on two occasions was served drinks of whiskey. Thereafter, and on April 3, 1962, Hodge returned to Cook's home about noon and arranged to buy from him two (2) cases of moonshine whiskey for $35 per case. This was Cook's actual cost, but the reason for the concession does not appear. Hodge was being paid for his undercover work by the Government on a per diem basis and for gasoline used in his private automobile. Cook advised Hodge to return for the whiskey "at dusky dark" the same day.

When Hodge returned to consummate the transaction with Cook, two revenue agents concealed themselves in the trunk of Hodge's automobile. They sought no warrant for Cook's arrest, although Hodge had seen him possessing and selling tax-unpaid whiskey theretofore; and they sought no search warrant for Cook's premises, although Hodge could have sworn to Cook's violation of the federal liquor laws from personal knowledge. This resulted from the agent-in-charge's misconception of the law of arrest and search and seizure. He testified that during his four and one-half years as a revenue agent, it has been his impression that arrest and search warrants will not issue on information alone. This is true, of course, but is not the whole truth. Consequently, revenue agents in this area have been engaged, as a policy, in arresting suspects without a warrant following unlawful searches. United States v. Valentine, D.C.Tenn. (1962), 202 F.Supp. 677; United States v. Daniels and Taylor, D.C.Tenn. (1962) Criminal No. 6539, unpublished. In the latter case this same agent testified candidly that he sought no warrants of arrest or search because he realized his information was insufficient to justify their issuance.

Hodge backed his vehicle wholly into the front yard of Cook's premises preparatory to receiving delivery of the promised contraband. The defendant Young came out and engaged Hodge in conversation, although the subject of whiskey was not mentioned. The concealed agents heard, during the 45 minutes they remained in the car trunk, this and other conversations on the part of several persons congregated at Cook's place. While Young and Hodge were talking, the defendant Cook brought a case of whiskey out of his house and handed it to his codefendant Young. Hodge opened the left door of his automobile and, as Young was placing the case on the floorboard, Cook came out of his house with a second case of whiskey. Hodge had looked in the back seat of his car and testified that the case therein contained moonshine whiskey and that he did not see the required stamps affixed to the containers in the case. As the defendant Cook approached the vehicle carrying the second case, the revenue agents leaped from the trunk of the car. One of them was armed. They seized the case the defendant Cook was carrying, and one of the agents saw the defendant Young "leaning over" the floorboard of the automobile. Investigation of the contents of the two cases revealed an aggregate of twelve (12) gallons of contraband whiskey, and both defendants were then arrested formally.

Subsequently to his being apprised of his constitutional right not to make statements, the defendant Cook told a third revenue agent that he had been in the liquor business "some time"; that his

codefendant Young was only working for him and should be released; and that he sold Hodge the contraband only because he was fearful of a disturbance by and among his patrons which might bring the city police, and he wanted to remove the whiskey before the authorities arrived.

If the contraband whiskey is admissible in evidence, the prosecution has proved beyond a reasonable doubt the guilt of both defendants under both counts of the indictment herein.

Unquestionably these revenue agents made an unauthorized physical penetration into the premises of the defendant Cook when they inspired the movement of their informer's automobile onto such premises while they were concealed in its trunk. The Supreme Court of the United States " * * * has never held that a federal officer may without a warrant and without consent physically entrench into a man's * * * home * * * * " and thereby obtain evidence for use against him at his subsequent criminal trial. Silverman v. United States (1961), 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734, 739. While Silverman, supra, involved the unlawful invasion of a person's privacy by eavesdropping, the Court's decision was " * * * based upon the reality of an actual intrusion into a constitutionally protected area." Idem., 365 U.S. at p. 512, 81 S.Ct. at pp. 682, 683, 5 L.Ed.2d at p. 739.

■ Where the uncontradicted evidence shows that the officers came upon the premises without the knowledge of the defendant, and thus he could not reasonably be found to have voluntarily permitted them to come for any purpose, any subsequent search and seizure are unlawful and the evidence procured thereby is inadmissible. Strong v. United States, C.C.A.1st (1931), 46 F.2d 257. A search implies invasion and quest, which in turn implies some sort of force, actual or constructive, much or little. State v. Quinn (1913), 111 S.C. 174, 97 S.E. 62, 3 A.L.R. 1500. Entry by stealth can, of course, be as unlawful as entry by the illegal use of force. Gouled v. United States (1921), 225 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, cited in Gatewood v. United States (1954), 93 U.S. App.D.C. 226, 209 F.2d 789. And where it clearly appears that the entry is accomplished by subterfuge, such an entry has been held unlawful, the subsequent seizure unlawful, and the evidence obtained thereby properly excluded on the trial of the case. Gatewood, supra. Where officers gained entry onto the property of the defendant under false pretenses, the subsequent search and seizure, carried out after the practice of this fraud, violate the guarantees of the Fourth Amendment. Searches and seizures are equally unreasonable and equally violative of constitutional rights whether made subsequent to entry by force and violence, or to entry procured by stealth and fraud. United States v. Reckis, D.C.Mass. (1954), 119 F.Supp. 687, citing Gouled v. United States, supra; Fraternal Order of Eagles, No. 778 v. United States, C.C.A.3rd (1932), 57 F.2d 93, 94.

■ In general, the test to be applied in determining whether search and seizure is unreasonable is whether the thing done, in sum of its form, scope, nature, incidents and effect, impresses as being fundamentally unfair or unreasonable in the specific situation when the immediate end sought is considered against the private right affected. Schwimmer v. United States, C.A.8th (1956), 232 F.2d 855, cert. den. 352 U.S. 833, 77 S.Ct. 48, 1 L.Ed.2d 52.

■■ Searches for evidence of crime present situations demanding the greatest, not the least restraint upon the government's intrusion into privacy, and it was at such searches that the Fourth Amendment was primarily directed. Abel v. United States (1960), 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668, reh. den. 362 U.S. 984, 80 S.Ct. 1056, 4 L.Ed.2d 1019. Where facts known to officers were sufficient to enable them to have procured a search warrant but they conducted a search without a warrant, unless justifiable on other grounds search without warrant was not "reasonable" within meaning of the Fourth Amend-

ment. United States v. Martin, D.C. N.Y. (1959), 176 F.Supp. 262; Carroll v. United States (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. And such a seizure can survive the constitutional inhibition only upon a showing that surrounding facts bring it within one of the exceptions to the rule that a search must rest upon a search warrant. Rios v. United States (1960), 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688.

 The prosecution maintains that, as the defendant Cook was selling whiskey "by the drink" in his residence, his front yard was not a part of his curtilage. The Court does not find this amply established by the evidence, particularly in view of the fact that the burden is on those who make a search without a warrant to justify the same, such as in "some grave emergency". McDonald v. United States (1948), 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153; Johnson v. United States (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

The Fourth Amendment to the Constitution of the United States not only guarantees that the right of citizens to be secure in their "persons, houses, papers, and effects, against unreasonable searches and seizures" shall be inviolate, it also provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."

 This constitutional guaranty is now implemented by Rules 3 and 4, Federal Rules of Criminal Procedure. No officer should make a search without a warrant where the opportunity for the issuance of a warrant exists. Carroll v. United States, supra. In the case at bar the arrest and search were made within the limits of a city where a United States Commissioner of this court is resident.

Law enforcement officers in Tennessee are not permitted to make arrests without a warrant unless: (1) a public offense is committed or a breach of the peace is threatened in their presence; (2) the suspect has committed a felony, though not in the officers' presence; (3) when a felony has actually been committed, and the officers have reason to believe the person arrested committed it; (4) on a charge made, upon reasonable cause, of the commission of a felony by the person arrested; or (5) a person is attempting to commit suicide. T.C.A. § 40–803. Otherwise, officers in making arrests must follow the aforementioned criminal rules which provide that an arrest warrant shall be issued only on a written and sworn complaint (1) setting forth "the essential facts constituting the offense charged", and (2) showing "that there is probable cause to believe that [such] an offense has been committed and that the defendant has committed it." Giordenello v. United States (1958), 357 U.S. 480, 485, 78 S.Ct. 1245, 1249, 2 L.Ed.2d 1503, 1509.

 The requirement of the Fourth Amendment applies to arrest warrants as well as search warrants, and the " * * * protection afforded by these Rules, when they are viewed against their constitutional background, is that the inferences from the facts which lead to the complaint ' * * * be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, 333 U.S. 10, 14 [68 S.Ct. 367 [369], 92 L.Ed. 436, 440]. The purpose of the complaint, then, is to enable the appropriate magistrate, here a Commissioner, to determine whether the 'probable cause' required to support a warrant exists. The Commissioner must judge for himself the persuasiveness of the facts relied on by a complaining officer to show probable cause. He should not accept without question the complainant's mere conclusion that the person whose arrest is sought has committed a crime." Giordenello v. United States (1958), supra, 357 U.S. 480, 486, 78 S.Ct. 1245, 1250, 2 L.Ed.2d 1503, 1509.

" * * * Any assumption that evidence sufficient to support a" [Commissioner's] "disinterested determination to

issue a search warrant will justify the officers in making a search without a warrant would reduce the [Fourth] Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." Johnson v. United States (1948), supra, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440.

As the Court understands the prosecution's contention, the search without a warrant here is authorized on the theory that the defendants were committing a public offense in the presence of the revenue agents. This contention is not supported by the proof. The revenue agent testified that he made the arrests on the basis of what he saw when he got out of the automobile trunk. And what did he see? He saw the defendant Cook approaching with a case or carton, the contents of which were then unknown to him; he saw the defendant Young leaning over the floorboard of the informer's automobile. There was no conceivable way for the agent to *know* that whiskey was in the cases until he investigated their contents; certainly, there was no way for him to know that any such whiskey was contraband until this search had been made. Thus, the arrest can only be justified by what the officers discovered in their search, and the search can be justified only by their arrest of the defendants.

▮ "* * * This will not do. An officer gaining access to private living quarters under color of his office and of the law which he personifies must *then* have some *valid basis* for the intrusion.

Any other rule would * * * obliterate one of the most fundamental distinctions between our form of government, where officers are under the law, and the police-state where they are the law." Johnson v. United States, supra, 333 U.S. p. 17, 68 S.Ct. pp. 370, 371, 92 L.Ed. p. 442, (emphasis supplied).

"* * * Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence. As Mr. Justice Brandeis, dissenting, said in Olmstead v. United States, 277 U.S. 438, 485 [48 S.Ct. 564 [575] 72 L.Ed. 944, 959, 66 A.L.R. 376] (1928): 'Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. * * * If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.' Nor can it lightly be assumed that, as a practical matter, adoption of the exclusionary rule fetters law enforcement. * * * *" Mapp v. Ohio (1961), 367 U.S. 643, 659, 81 S.Ct. 1684, 1694, 6 L.Ed.2d 1081, 1092.

The Fourth Amendment did not confer a right upon the people. It was a precautionary statement of a lack of federal governmental power, coupled with a rigidly restricted permission to invade the existing right. The right guaranteed was a right already belonging to the people. The reason for the search warrant clause was that public interest required that personal privacy be invadable for the detection of crime, and the Amendment provided the sole and only permissible process by which the right of privacy can be invaded. District of Columbia v. Little (1949), 85 U.S.App. D.C. 242, 178 F.2d 13, 17, 13 A.L.R.2d 954, affirmed on nonconstitutional grounds 399 U.S. 1, 70 S.Ct. 468, 94 L.Ed. 599.

The "probable cause" the officers had to arrest and search, or search and arrest, the defendants in this case presents a weaker factual situation than one pre-

viously coming before this court. In the earlier case a defendant, a known bootlegger, was seen by an officer wearing a bulging blouse. On the basis of the suspect's reputation and the bulging blouse he was then wearing, the officer concluded that the suspect was carrying tax-unpaid whiskey and searched him. The unlawful search was productive of contraband whiskey, and the defendant was arrested. The Court sustained his motion to suppress the evidence thus obtained.

(Now Chief) Judge Robert L. Taylor made the following graphic observation:

"All the officer observed in the present case was a man crossing a public street, wearing a jacket which appeared to have something inside in addition to the wearer. The officer was interested not in public offenses in a general sense, but in an offense against the federal internal revenue laws, specifically traffic in tax-unpaid whiskey. All the evidence he had that such offense was being committed in his presence was a bulge in the pedestrian's jacket. The only one of his five senses relied on to detect crime in the given case at the given moment was his sense of sight. What was seen was a bulge in a jacket. The cause of the bulge was not revealed. It could have been a live pig, picnic ham, loaf of bread, or any one of countless other things. Yet what was hidden behind the impenetrable opacity of the jacket and denied to the sense of sight was imaginatively revealed not merely as whiskey, but as whiskey of the tax-unpaid variety. Not in the officer's sensory presence, but only in his metaphysical presence, was a public offense being committed. By the present state of the law it is only the former which lends validity to an arrest without a warrant." United States v. Sipes, D.C.Tenn. (1955), 132 F.Supp. 537, 540.

■ Because of the foregoing principles of constitutional law cited and quoted, the Court concludes that the evidence against the defendants Cook and Young was obtained by means of an unlawful search and seizure and is inadmissible against them. Let an order be prepared sustaining the defendants' motion and releasing the defendants from custody.