**UNITED STATES of America, Plaintiff,**

**v.**

**George Thomas ANDERSON, Defendant.**

**No. CR–4–75–2.**

United States District Court, E. D. Tennessee, Winchester Division.

July 24, 1975.

Hugh J. Moore, Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff.

Burton E. Strubhar, Pensacola, Fla., for defendant.

## MEMORANDUM OPINION

NEESE, District Judge.

This is a prosecution for the unlawful possession of the defendant Mr. Anderson of a controlled substance, with the intent to distribute and dispense the same. 21 U.S.C. § 841(a)(1), (b)(1) (B). It is charged that Mr. Anderson so possessed with such intent about 700 lysergic acid diethylamide tablets.

Such tablets were taken from the glove compartment of Mr. Anderson's automobile by a trooper of the highway patrol, Tennessee department of safety. The defendant moved to suppress the evidence of this contraband, on the ground that it was seized in an unconstitutional search. Constitution, Fourth Amendment. He moved also to suppress evidence of incriminatory statements made at the Bedford County, Tennessee jail while he was in the custody of arresting officers, on the ground that such statements were made in violation of his right to the assistance of counsel, Constitution, Sixth Amendment. The Court received evidence on these issues on July 21, 1975, sustained the motions, and released the defendant from custody.

The evidence reflected that about 7:00 o'clock, a. m., July 31, 1974, Troopers Roland D. Finchum and John H. Glass-

meyer were traveling northwardly in a patrol car on U. S. highway route no. 231, less than a mile from the city limits of Shelbyville, Tennessee. They saw approaching them from the opposite direction a TR 6 automobile with no license plate on its front. At that time, it was unlawful in Tennessee for a vehicle to be operated without license plates on both the front and the rear ends of motor vehicles. Suspecting that such vehicle was in violation of such statute, Trooper Finchum turned the patrol car around and followed the smaller vehicle. As he neared such automobile, he observed a Florida license plate on its rear and recognized that only one license plate is required by law in that state.

These troopers were assigned to duty in Shelbyville. Principally because of the activity there year-round in connection with the National Walking Horse Celebration, many out-of-state vehicles appear. In some instances, new residents, aware of the foregoing fact, fail to transfer the registration of their out-of-state vehicles seasonably to Tennessee, and these troopers undertake to enforce that law. Suspecting that this vehicle might fall into that category, even after being satisfied concerning their suspicion regarding the single license plate, the troopers determined to check the registration of the vehicle ahead.

An officer of the Tennessee department of safety is empowered to demand the exhibition by a person operating a motor vehicle within this state of an operator's or chauffeur's license. T.C.A. § 59–709. As the Tennessee Supreme Court has stated:

    \*    \*    \*    \*    \*    \*

\* \* \* One of the few exceptions of the law relating to arrests without a warrant is the authority of highway patrol officers to stop a car and demand to see the license of the operator. \* \* \* Others than [s]tate [h]ighway patrolmen may not demand to see the license, unless the operator then or immediately, [sic] prior has been engaged in a violation of an ordinance or a statute. \* \* \* [T]his authority should be exercised in good faith and all sincerity and if exercised as a pretext or subterfuge for a search, it is an unlawful exercise of that authority and constitutes an unlawful arrest. \* \* \*

Robertson v. State (1947), 184 Tenn. 277, 198 S.W.2d 633, 636[3].

Another statute of the state of Tennessee, T.C.A. § 59–408, empowers an officer of the Tennessee department of safety to demand that the driver of a motor vehicle within this state display to him a certificate of vehicle registration. Read in para materia with T.C.A. § 59–709, this latter statute's language does not appear to contemplate that a highway patrolman of the state may stop a car and demand to see its certificate of vehicle registration where the operator thereof has not violated an ordinance or law or is not so doing at the time. It is clear, however, that these troopers were authorized to check Mr. Anderson's drivers' license.

The officers illuminated the flashing blue lights atop their patrol car and sounded its siren. Mr. Anderson stopped immediately. To this point, except for the single license plate, the officers had witnessed no criminal activity or suspicious conduct on the part of the defendant. Neither did they have any information that Mr. Anderson had violated any law.

After the Anderson automobile stopped, Mr. Finchum went to its driver's side and Mr. Glassmeyer to its passenger's side. Trooper Finchum demanded that Mr. Anderson produce and display his driver's license. Mr. Anderson displayed to the officer an ostensibly valid Florida driver's license. Trooper Finchum then demanded of Mr. Anderson proof of registration of the vehicle he had been operating.

It is undisputed that Florida law does not require that registration documents be kept in an automobile, and Mr. Anderson was not certain whether he had such with him or not. While he was search-

ing unsuccessfully therefor, Trooper Finchum moved to the front of the Anderson vehicle. Through its windshield he could see the ashtray atop the dashboard of the vehicle, and therein, in plain view, he could see "* * * what appeared to me to be a marijuana cigarette smouldering in the ashtray. This was a short, twisted, tightly-rolled cigarette—like it had been rolled. * * * I did not smell any odor. * * * "

At this point in the confrontation, Trooper Finchum required Mr. Anderson to alight from his automobile and stand at its rear at the front of the patrol car. He placed him formally under arrest for possessing a controlled substance. The two troopers then conducted a general exploratory search of the interior of the automobile. Trooper Finchum testified the officers were "* * * looking for nothing in particular. * * * " He discovered in the process of such search a whole marijuana cigarette, and Trooper Glassmeyer opened the glove compartment of the vehicle. In such compartment, Trooper Glassmeyer discovered a hand calculator in a zippered bag. He unzipped this bag, discovered therein and seized, a small plastic package of tablets, which afterward proved to be lysergic acid diethylamide.

Returning with the seized articles to Mr. Anderson, Trooper Finchum advised him of his rights to silence and to the assistance of counsel as well as his right, if indigent, to the appointment of counsel. He stated he understood. This warning went no farther. Mr. Anderson was thereupon transported to jail. There, he was reminded (to the same limited extent) of his rights, which he stated he understood. Mr. Anderson then stated that he was a user of marijuana and had been smoking a marijuana cigarette earlier that day. He disavowed knowledge of how the controlled substance tablets had gotten into his automobile and offered to assist in locating a person in Nashville, Tennessee whom, he said he thought, might have placed them therein.

■ The warnings Trooper Finchum (twice) gave Mr. Anderson fail to pass muster under *Miranda v. State of Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. In addition to advising Mr. Anderson as he did, Trooper Finchum was obligated to advise him also that, if he desired, Mr. Anderson had a right to have counsel present with him during the interrogation, 86 S.Ct. at 1626 [32], [36], and that Mr. Anderson might stop the interrogation at any point, once it was begun, until counsel was present or had been consulted, 86 S.Ct. at 1628 [46]. For such reason, the in-custody statements of Mr. Anderson alluded to hereinbefore hereby are SUPPRESSED.

■ There is considerable doubt in the Court's mind that Trooper Finchum had a right to be in the position he assumed, at the time he assumed it, to view the incriminating evidence provided by the lighted marijuana cigarette. There must have been justification for his continued intrusion into the privacy of Mr. Anderson at the moment he came across inadvertently the piece of evidence in plain view incriminating Mr. Anderson and supporting his arrest of the defendant. *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 466, 91 S.Ct. 2022, 2038[17], 29 L.Ed.2d 564, rehearing denied (1971), 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120. He had obtained a satisfactory response from Mr. Anderson concerning the matter for which he had a clear right to stop his vehicle and check. There was no evidence that anything had occurred to justify the troopers' checking Mr. Anderson's certificate of vehicle registration.

Assuming *arguendo,* however, that the prosecution is entitled to the benefit of the plain view doctrine, the prosecution has not justified Mr. Anderson's warrantless arrest and the incidental search of his automobile and seizure of the contraband by what Trooper Finchum sensed.

■ Good faith on the part of Trooper Finchum was not enough. *Henry v. United States* (1959), 361 U.S. 98, 102,

80 S.Ct. 168, 171, 4 L.Ed.2d 134, 138. Now that the constitutional validity of Mr. Anderson's arrest has been challenged, this Court must determine whether the facts available to the officer at the moment of the arrest would have warranted " * * * a man of reasonable caution in the belief * * *" that an offense had been committed. *Beck v. State of Ohio* (1964), 379 U.S. 89, 85 S.Ct. 223, 228[10, 11], 13 L.Ed.2d 142.

Trooper Finchum had no information of previous criminality on Mr. Anderson's part. Mr. Anderson had committed no previous crime in the officers' presence. They had no information that he had committed a felony. Trooper Finchum smelled nothing, heard nothing, touched nothing, tasted nothing, at the time he took Mr. Anderson formally into custody. All he had supporting his warrantless action was his sight: he saw a "home-made looking" cigarette in the ashtray. He had no way of knowing at that instant whether it contained tobacco, corn-silks, "rabbit-tobacco", marijuana or a myriad of other combustible substances. A "homemade" cigarette containing any of these substances would have looked substantially as this one did. Although he had participated in 50 or 60 earlier investigations involving marijuana, his testimony contained nothing to indicate how such experience would have transformed his mere eyesight into omniscience.

The prosecution relied principally in justification of the warrantless arrest, search and seizure upon *United States v. Burton*, C.A.D.C. (1974), 16 Cr.L. 2149. There, however, a law enforcement officer had approached a disabled vehicle to forewarn the driver against the making of an illegal turn in traffic, smelled the strange odor of smoke exhaled from a large, apparently hand-rolled, pink cigarette, and witnessed a passenger's "* * * vigorous attempt to conceal something * * *" (which could have been a weapon) under the front seat of the vehicle. When the officer had caused the occupants of the vehicle to alight therefrom and returned thereto to determine if the concealed item was in fact a weapon, the contraband was discovered inadvertently in plain view. Those facts are distinguishable from those *sub judice*. Likewise, where law enforcement officers had previous information of an accused's criminality and made pertinent observations of their own, a different situation was presented than is present here. *Cf. United States v. Soriano*, C.A. 5th (1974), 497 F.2d 147 and *United States v. Anderson*, C.A. 5th (1974), 500 F.2d 1311.

■ "* * * The Fourth Amendment to our federal Constitution must be given a broad and liberal construction in favor of the individual citizen in order to thwart illegal invasion of the constitutional safeguard provided, to the end that the Amendment, while it may at times shield the guilty, shall always protect the innocent. * * *" *United States v. Valentine*, D.C.Tenn. (1962), 202 F.Supp. 677, 680[8]. It was at searches for evidence of crime that the Fourth Amendment was directed primarily, and these searches demand the greatest restraint upon the government's intrusion into privacy. *United States v. Cook*, D.C.Tenn. (1962), 213 F.Supp. 568, 571[6]. It is better that the guilty sometimes go free than that citizens, protected by the Fourth Amendment from such, be subject to easy arrest. *United States v. Souther*, D.C.Tenn. (1962), 211 F.Supp. 848, 852[3].

■ The burden was upon the prosecution herein to establish justification for the seizure of this contraband without a warrant. *United States v. Strouth*, D.C.Tenn. (1970), 311 F.Supp. 1088, 1090[1]. As there was not probable cause for the warrantless arrest, the prosecution's further contention that the search and seizure involved were lawful incidents of a lawful arrest must be rejected.

The evidence of the contraband mentioned hereinabove hereby is SUPPRES-

SED for those reasons. The prosecution conceding that Court's actions on the defendant's motions would be dispositive of this action, the defendant Mr. George Thomas Anderson was ordered released from custody.