PARKER *v.* STATE.

(*Jackson*, April Term, 1941.)

Opinion filed May 24, 1941.

Robert M. Murray, of Huntingdon, for plaintiff in error.

Ernest F. Smith, Assistant Attorney-General, for the State.

Mr. Justice DeHaven delivered the opinion of the Court.

Plaintiff in error, Fred Parker, hereinafter referred to as defendant, has appealed to this court from a conviction for the unlawful possession of two pints of intoxicating liquor, with punishment fixed at a fine of $20 and six months confinement in the county jail.

The evidence shows that acting under a search warrant that commanded that a certain described truck be searched for intoxicating liquor, the officers, not finding any such liquors in the truck, proceeded to search the person of defendant with the result that two pints of liquor were found on him. The warrant, omitting the caption, is as follows:

"Proof having been made before me by the above named Affiant, Albert Costen, (the Affidavit above being referred to and made a part of this search warrant) that Fred Parker is now in the unlawful control and possession of intoxicating liquors in a truck as above set out, and there is a probable cause for so believing, you are commanded to make immediate search of the above described truck, also here and now described, being truck used, occupied and under the control of said person. Said defendant is now transporting a quantity of intoxicating liquor in a Chevrolet pickup truck, license number 22-182 in Carroll County, Tennessee. This 4th day of February, 1941."

The sole witness for the State was one McKenzie, who described himself as a Highway Patrolman, testified, in substance that he searched the truck described in the warrant and found no liquor; that he then approached defendant and said to him, "You might have a knife or a gun or something like that on your person," and defendant said, "You haven't the right to search me." McKenzie was asked, "Q. You did not see any whisky? A. No, sir." Again:

"Mr. McKenzie, before you searched Mr. Parker you did not see any whisky about his person? A. No, sir.

"Q. He was not attempting to commit a felony in your presence? A. No, sir.

"Q. He had not committed a felony? A. No, sir.

"Q. He had not breached the peace? A. No, sir.

"Q. The defendant had not committed a misdemeanor in your presence? A. No, sir."

McKenzie further testified:

"We didn't find any whisky in the truck and I went around on the other side of the truck where Mr. Parker was standing next to running board of car and told him that I was going to search him. Mr. Parker had on a leather jacket which had two zipper pockets, one on each side of his breast and I found a pint of whisky on each side, making a total of two pints."

McKenzie further stated:

"I thought that I had the right to search him as he was the owner of the truck and, too, I thought he might have some whisky on him and it looked to me like he was trying to get away."

"Q. Mr. Parker was making no attempt to run was he? A. No, sir.

"Q. And you didn't see any whisky on him before

making the search, did you? A. No, I didn't see any whisky on him until after I searched him and found two pints in his leather jacket.''

■ Section 11901 of the Code provides, in substance, that if the magistrate is satisfied of the existence of the grounds of the application for a search warrant, and that there is probable grounds to believe their existence, he shall issue a search warrant signed by him, directed to the sheriff, any constable or any peace officer, commanding him *"to search the person or place named for the property specified."* Section 11902 of the Code sets forth the form of a search warrant. Under section 11902 the warrant may command the search on the person named, or the premises described, or both. As hereinbefore stated, the warrant in the instant case, commanded a search of the truck, specifically described, but did not command a search of the person of defendant. There existed, therefore, no authority whatever, under the warrant, for the search made on the person of defendant.

■ The officer, McKenzie, had no lawful authority whatever for the arrest of defendant. This is made perfectly clear from his own admissions. In *Hughes* v. *State,* 145 Tenn., 544, 238 S. W., 588, 594, 20 A. L. R., 639, this court held that searches are allowable under the common law in cases where persons are lawfully arrested, and quoted with approval the following from 2 R. C. L., 468, in part as follows:

''An officer making an arrest has authority to search the person of his prisoner, even against his will; but a search is justifiable only as an incident to a lawful arrest, and if the arrest is unlawful the search is also unlawful. Thus an officer acting without a warrant for an arrest and without attempting to make an arrest is not justified

in making a search of a person upon mere suspicion that he has committed a crime.''

The search of the person of defendant was unwarranted and showed an utter disregard of his constitutional rights. The evidence obtained under the illegal search was incompetent and it was error in overruling defendant's objection thereto.

Reversed and remanded.