**UNITED STATES v. GILLIAM.**

Cr. No. 14920.

United States District Court
E. D. Tennessee, N. D.

Jan. 4, 1950.

Otto T. Ault, U. S. Atty., Chattanooga, Tenn., Ferdinand Powell, Jr., Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

Hobart Atkins, Knoxville, Tenn., Gilbert Goodwin, Lenoir City, Tenn., for defendant.

ROBT. L. TAYLOR, District Judge.

The defendant is charged with having transported and possessed distilled spirits in violation of section 2803(a) of the Internal Revenue Code, 26 U.S.C.A. § 2803 (a). He has filed a motion to vacate the seizures made by agents of the Alcohol Tax Unit and to suppress the evidence obtained by search of his automobile, on the ground that the search was made without a search warrant in violation of the Fourth Amendment, and that use against him of the evidence thus obtained would violate his rights under the Fifth Amendment, to the Constitution of the United States.

The Court is of the opinion that the motion should be overruled. There is some conflict in the testimony, but upon reading of defendant's affidavit and hearing the open court testimony of the federal officers who made the search, the Court finds the facts to be as follows:

During the forenoon of August 12, 1949, two officers of the Alcohol Tax Unit visited the office of the Sheriff of Loudon county, Tennessee, where they were told by a deputy sheriff that he, the deputy, had been informed by a certain person whom he had found to be a dependable informer, that the defendant had gone to a place in the hills of Monroe county for a load of whiskey. Defendant, a resident of Lenoir City, in Loudon county, had a reputation as a bootlegger. The federal officers were informed by state officers that they had raided his place several times but that defendant had managed to destroy the evidence of his bootlegging activities, with the result that they had never been able to get a good case against him.

On former occasions one of the federal officers had worked in cooperation with the informing deputy sheriff and had found him to be dependable as an informer. The deputy sheriff did not disclose the name of his own informer, a point urged by the defense on the ground that the federal officers proceeded not only upon hearsay, but upon remote hearsay, or "hearsay once removed."

Acting upon information obtained from the deputy sheriff, the federal officers drove to Monroe county. The place to which defendant reportedly had gone was a section called Ball Play, reported to the officers to

be a notorious moonshiner hideout. Told that defendant would be driving a 1941 model green Buick sedan, with 1949 Tennessee license plates numbered 48-31, the federal officers waited near the point where a side road came into the highway from the direction of Ball Play. About 5:00 p. m. the described automobile came out of the side road and headed toward Madisonville. The federal officers followed it about two miles then pulled alongside, announced that they were federal officers, and ordered the driver (defendant) to pull over and stop.

Defendant obeyed the order and one of the officers got out of the Government car and stood by that of defendant. He asked defendant how much whiskey he had. Defendant picked up a half-pint, unstamped glass container of whiskey which he said he had found beside the road. He told the officer that that was all the whiskey he had, but the officer took defendant's car keys and unlocked the rear compartment where he found twenty-four half-gallon jars of unstamped whiskey. Affidavit of defendant in support of his motion makes no mention of a half-pint container, and as to what was disclosed by opening of the rear compartment the affidavit states that the officer "claimed to have found some whiskey that was tax unpaid."

The other officer, who had parked the Government car ahead of defendant's automobile and come back to join his companion, upon announcement of the discovery in the rear compartment placed defendant under arrest.

A question of law has been raised at this juncture. It is the theory of the defense that the arrest took place when the officers stopped defendant's automobile, that this arrest was illegal, and that the search predicated upon it was illegal. The defense insists, also, that apart from the arrest the search was illegal. It is the Government's theory that the arrest was not made until formally announced to defendant by the officer and that it was valid because of what was turned up by the search which, the Government insists, was legal.

The Court cannot accept the theory that the arrest was made at the time the officers stopped defendant's automobile. That incident could have been no more than a civil trespass, and the officers could have allowed defendant to drive away without proceeding further against him. But when an arrest is made, any discretion the officers may have had therein is at an end. They have no authority to release the arrested person but must take him before a Commissioner, or other magistrate, who determines what shall presently be done with him. Rule 5, Federal Rules of Criminal Procedure, 18 U.S.C.A.

What the officers did here indicates their intention was first to search defendant's automobile. Where the intention is to search, stopping of the automobile is a necessary preliminary step. It is well settled that a search, to be valid, must be valid from its commencement. Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663. Whether the search of an automobile without a warrant is valid from its commencement depends upon whether reasonable grounds existed for commencement of the search. Scher v. United States, 305 U.S. 251, 59 S.Ct. 174, 83 L.Ed. 151; Husty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629, 74 A.L.R. 1407; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. It is only the unreasonable search that is forbidden by the Constitution. Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. Search of an automobile without a warrant is justified where facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302.

In the case here, the officers who searched defendant's automobile were experienced officers. Information that defendant had gone for a load of whiskey, though hearsay once removed, came from

a source found by their informer to have been reliable. Defendant had the reputation of being a bootlegger. A place in another county, many miles from defendant's residence, had a reputation as the hideout of moonshiners. That defendant, a bootlegger by reputation, should have been found near and returning from a distant section known for moonshining on the day the informant told the officers he was going for a load, bore the aspects of something more positive than coincidence. Combining what they had heard with what they saw, the officers were not unreasonable in concluding that defendant was engaged on that occasion in violating the law. They accordingly were justified in stopping defendant's automobile and searching it. Having lawfully searched it and found the evidence of defendant's guilt, they were justified in arresting him. In rendering the opinion of the court in the Brinegar case, the late Justice Rutledge said: "In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310.

Objection to admission of evidence on the ground that it is hearsay is an old and familiar device of the legal technicians. Undoubtedly it has its usefulness, but it is not entitled to unlimited recognition. If hearsay statements were to be ruled out as contributing to the existence of probable cause or reasonable grounds for the behavior of officers engaged in apprehension of criminals, the whole informer system would be gravely imperiled and law enforcement efforts threatened with disaster. That objection was raised in connection with an arrest without warrant in United States v. Burchfield, D.C., 87 F.Supp. 805. In overruling a motion to suppress evidence, this Court said:

"In the Court's view of it, the statement made to the officers by Moody was not hearsay as to them, but entered as direct testimony into the formation of their belief that a felony had been committed. See, United States v. Heitner et al., 2 Cir., 149 F.2d 105, certiorari denied 326 U.S. 727, 66 S.Ct. 33, 90 L.Ed. 432.

"The evidence required to bring a defendant to trial is something less as to competency than is required of evidence presented at the trial or on motion to suppress, the dictum on this point to the contrary in Grau v. United States, 287 U.S. 124, 128, 53 S.Ct. 38, 77 L.Ed. 212; being rejected in Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302. See, also, Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213."

Let an order be prepared, overruling defendant's motion.