**UNITED STATES of America,**
**Plaintiff,**

v.

**Felix Gilbert SOUTHER, Defendant.**
**Cr. No. 6584.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Oct. 4, 1962.

J. H. Reddy, U. S. Atty., and Cecil D. Meek, Jr., Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff.

W. R. Battley, Statesville, N. C., for defendant.

NEESE, District Judge.

The defendant Felix Gilbert Souther has filed a timely motion to suppress for use as evidence in this case a quantity of contraband moonshine whiskey seized by investigators of the Alcohol and Tobacco Tax Unit of the Internal Revenue Service, United States Department of the Treasury. Complaint is made that this evidence was obtained by means of an illegal search of the defendant's automobile and seizure of the contraband without a search warrant, Rule 41(e), Federal Rules of Criminal Procedure. It is also insisted that there was not probable cause for the defendant's arrest without a warrant.

A preliminary hearing on this motion was held September 17, 1962. Only one witness was offered, and it was stipulated that the Court's action on the motion will be determinative of the case on its merits. The Court has held the matter under advisement until now. Neither party provided the Court with a brief.

From the testimony of the witness C. G. Riddle, one of the ATU investigators, the Court specially finds the following pertinent facts:

On Sunday, February 25, 1962 Riddle received a telephone message suggesting that he meet his caller in the Elk Valley section of Johnson County, Tennessee "after dark". Riddle and another ATU investigator did so about eight o'clock p. m. The agent identified his

caller as "a reliable informer" who resided in the vicinage of Elk Valley. This informer advised the agents that during the immediately ensuing "dark hours, the unknown owner" of a 1954 gray Dodge automobile, who was approximately 50 years of age and had a ruddy complexion, would drive this car to a point near the chicken-house of Jewell T. Hensley in the Elk Valley section and would have with him in the said vehicle six (6) gallons of untaxpaid whiskey. Neither of the officers knew this defendant at that time and their informer did not identify him, even if the informer knew him. There was no showing that either the defendant or Hensley was then suspected of criminal activity.

As a result of the information thus received, the two investigators began a surveillance of the chicken-house near the Hensley residence. About four o'clock, a. m., a 1954 gray Dodge automobile approached the chicken-house and stopped there. It can reasonably be inferred that the investigators even in the dark could ascertain that the vehicle was gray. They detained the driver of the automobile, whom neither of them had ever seen before, searched the automobile he had been driving, and discovered therein six (6) gallons of contraband whiskey. The person detained was afterward identified as the defendant Souther. The record reflects no conversation between the officers and the defendant prior to the latter's detention, the search of his car, and the seizure of the contraband. Some two and one-half hours later the defendant was taken before the nearest United States Commissioner in Johnson City, Tennessee. The investigators gained no information from their surveillance additional to that which they had theretofore received from their unidentified informer. They had no warrant for the defendant's arrest and no search warrant for the vehicle he had been driving.

■ The Court takes judicial notice of the fact that some seven and one-half hours elapsed between the time these officers received their sparse information and the time of their detention of the defendant, and further that some five (5) hours would be required to drive from the Elk Valley section to Johnson City and return.

Riddle testified that he did not seek either a warrant for the defendant's arrest or a search warrant for the vehicle the defendant was driving because his companion on the raid was an inexperienced investigator who could neither be left alone at the scene of the anticipated arrest and search nor sent to Johnson City for warrants. He also testified that in this region the ATU investigators, themselves, prepare search warrants for issuance by United States Commissioners to assure that the searches will "stand up in court", and that there was insufficient time for him to have properly prepared such a warrant in this instance. Further, in any event, Riddle was of the opinion that the suspected contraband might arrive at the scene of the search before warrants could be obtained, and the suspected offender might thus escape. It was the investigators' information that the automobile in question would "probably get there about three o'clock in the morning".

The question for determination in this case is whether at the time of the arrest without a warrant and subsequent search, also without a warrant, the officers had secured, from their surveillance prior to such arrest and search, such information and facts as to constitute "reasonable cause" to believe that this heretofore unknown defendant and the car he was driving were then and there engaged in the illegal enterprise which was the basis of the charges brought against him. United States v. Parrott, C.A.6th (1962) 304 F.2d 619.

The authority of ATU investigators to make felony arrests without a warrant is restricted by 18 U.S.C. § 3045, which provides:

"Warrants of arrest for violations of internal revenue laws may be issued by United States commissioners upon the complaint of a United States attorney, assistant United

States attorney, collector, or deputy collector of internal revenue *or revenue agent,* or private citizen;" *etc.*

This is codification of the constitutional command of the Fourth Amendment to the effect that no warrants for either searches or arrests shall issue except "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." There is a particularly encouraging discussion of this requirement of probable cause in a recent opinion by Mr. Justice Douglas in Henry v. United States (1959), 361 U.S. 98, 80 S.Ct. 168, 4 L. Ed.2d 134, 137–138 which well might be required reading for all law enforcement officials. Even the dissent in Henry, supra, by Mr. Justice Clark, with whom the Chief Justice joined, is of little aid and comfort to the ATU investigators' actions herein because of the stronger facts in Henry. There, FBI agents had specific information concerning the defendant Pierotti; they saw contraband in his car before making the arrest and incidental search; they heard incriminating statements and had an incriminating conversation with the defendant Pierotti before making the arrest and the search incident thereto.

If any citizen other than the defendant Souther had driven a 1954 gray Dodge automobile to a point near the out-buildings of the Hensley residence at about the time the suspect here involved was expected there by these officers, they would undoubtedly have detained and searched an innocent person. By like token if the defendant Souther had happened to drive there in his car about that time without the moonshine whiskey in his car, his privacy unquestionably would have been unlawfully invaded.

"Courts can protect the innocent against such invasions only indirectly and through the medium of excluding evidence obtained against those who frequently are guilty." Brinegar v. United States (1949), 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879. The fact that the defendant Souther *was* violating the law does not justify his arrest without a warrant. Repeating what was held in Johnson v. United States (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436, the Supreme Court in Henry, supra, 4 L.Ed.2d at page 139, and in Rios v. United States (1960), 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688, holds specifically that an arrest is not justified by what the subsequent search discloses.

There is no hard-and-fast rule by which courts may determine whether government agents had or lacked sufficient information or personal knowledge to constitute probable cause for the arrest of a suspect and for a search without a warrant. " * * * (E)ach individual case, as it arises, must be decided upon its particular facts as to whether there was probable cause for a search or seizure." Fowler v. United States, C.A.6th (1955), 229 F.2d 215, 216.

The facts in the case at bar are distinguishable from those in somewhat similar cases where: (a) the officers had knowledge or information concerning the specific identity of a driver of an automobile before his arrest and search incident thereto; (b) the officers had knowledge or information concerning the specific automobile which the unidentified suspect would be driving; and (c) facts are developed during the surveillance to indicate that a crime is being committed in the officers' presence immediately prior to the arrest, search and seizure. Cf. Brinegar v. United States, supra; United States v. Parrott, supra; Bradford v. United States, C.A. 6th (1951) 194 F.2d 168; Gilliam v. United States, C.A.6th (1951), 189 F.2d 321, affirming D.C.Tenn., 87 F.Supp. 808; Fowler v. United States, supra.

When these officers restrained the defendant Souther and restricted his liberty of movement, the arrest, for the purposes of this case, was complete. Henry v. United States, supra, 361 U.S. 98, 80 S.Ct. p. 171, 4 L.Ed.2d p. 139. " * * (G)ood faith on the part of the arresting officers is not enough. * * * " Id.

**852**

This Court is of the opinion that *corroborating* facts if any, within the knowledge of these ATU investigators were insufficient to lead reasonably prudent, discreet and cautious men to believe under the circumstances that the defendant Souther had committed a felony so as to constitute probable cause for his arrest without a warrant, or to believe that contraband whiskey was being transported in the automobile they searched. United States v. Valentine, D.C.Tenn. (1962), 202 F.Supp. 677.

"* * * It is important, we think, that this requirement be strictly enforced, for the standard set by the Constitution protects both the officer and the citizen. If the officer acts with probable cause, he is protected even though it turns out that the citizen is innocent. Carroll v. United States, 267 U.S. 132, 156 [45 S.Ct. 280, 286, 69 L. Ed. 543, 552, 39 A.L.R. 790]. And while a search without a warrant is, within limits, permissible if incident to a lawful arrest, if an arrest is to support an incidental search, it must be made with probable cause. Carroll v. United States, supra [267 U.S.] at 155, 156 [45 S.Ct. at pages 285, 286]. This immunity of officers cannot be enlarged without jeopardizing the privacy or security of the citizen. * * *

* * * * * *

"* * * Under our system suspicion is not enough for an officer to lay hands on a citizen. It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest. * * *" Henry v. United States, supra, 361 U.S. 98, 102, 80 S.Ct. p. 172, 4 L.Ed.2d, pp. 138–140.

It having been stipulated that the Court's action on this motion is determinative of the merits of the case, the defendant Souther will be released from custody on the entry of an appropriate order. Counsel for the defendant will prepare a proposed order for submission to the Court following approval of same by the United States Attorney or otherwise as provided by the rules.