**UNITED STATES of America,
Plaintiff,**

v.

**Cleona HOOPER, Defendant.
Crim. No. 7055.**

United States District Court,
E. D. Tennessee,
Northeastern Division.
May 12, 1969.

**508**

John L. Bowers, Jr., U. S. Atty., Edward E. Wilson, and Robert E. Simpson, Asst. U. S. Attys., Knoxville, Tenn., for plaintiff.

Ben Hooper, II, Newport, Tenn., Dale Quillen, Nashville, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The defendant, aggrieved by an allegedly unlawful search for and seizure of contraband whiskey by federal authorities herein, has moved to quash the search warrant and suppress for use as evidence against him the contraband thus obtained. Rule 41(e), Federal Rules of Criminal Procedure. No less than 13 grounds are listed by the defendant in support of this motion. The Court received evidence necessary to a decision on the motion, *idem.*, on April 21, 1969.

■ The Court finds and concludes that the warrant is sufficient on its face.

It was not demonstrated by the defendant that anyone, who followed the directions set forth in the warrant, would not therefrom have arrived at the premises authorized to be searched. This warrant describes with particularity the place to be searched and the things to be seized. Berger v. New York (1967), 388 U.S. 41, 58, 87 S.Ct. 1873, 18 L.Ed. 2d 1040, 1052 [14, 15]. It commanded a search at these premises for tax-unpaid distilled spirits and property fit and intended to be used in violation of 26 U.S.C. §§ 5601(a) (12), 5604, 5686(a). Rule 41(b) (2), Federal Rules of Criminal Procedure.

■ Further, there was probable cause for the commissioner to believe the existence of the grounds on which the warrant issued. Rule 41(e) (4), Federal Rules of Criminal Procedure. There is a legal presumption, which the movant has not overcome here, that the commissioner performed properly his duty. United States v. Haskins, C.A.6th (1965), 345 F.2d 111, 112–113 [1, 2], affirming D.C.Tenn. (1962), 213 F.Supp. 551. The probability of criminal activity in progress on the defendant's premises was shown the commissioner in the affidavit supporting his issuance of the warrant, and he was not confined in making his determination of probable cause by niggardly limitations or by restrictions on the use of his common sense. Spinelli v. United States (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, 645[16].

The sole issue with the slightest vestige of merit raised by the multiplicity of protests by Mr. Hooper is that the warrant was executed illegally. Rule 41(e) (5), Federal Rules of Criminal Procedure. Mr. G. E. Childers, a special investigator of the alcohol, tobacco and firearms division in the federal Treasury Department, executed the warrant, assisted by several other trained investigators.

He testified that Mr. Hooper arrived at his home in a motor vehicle about the time the search began; that, because of some information received theretofore by

the officers, the defendant was searched immediately he alighted from his automobile, at a time when he had committed no offense in the presence of the officers and before he was placed in arrest; that he was advised that the search was being conducted by federal officers armed with a search warrant and was closely guarded during its progress; and that Mr. Hooper was given a copy of the search warrant but denied permission to leave the officers' custody to retrieve his eye-glasses, although the investigators advised Mr. Hooper his wife would be permitted to obtain his glasses.

Mr. Childers testified further, that after the searching had been completed, his superior Mr. Steve B. Whitlow made an inventory on the scene of the property there seized in the presence of both Messrs. Childers and Hooper, and that the defendant was given a receipt for the property seized on the back of the copy of the warrant with which he had been provided "* * * as soon as the property was seized. * * *" Although Mr. Childers denies having made a prior inconsistent statement in this connection, the Court finds that he had testified under oath before the hearing commissioner that Mr. Hooper was not given any receipt at the time of the search but was mailed a certified copy afterward.

The investigator testified that after the adjournment of the preliminary hearing herein, he and Mr. Whitlow were checking the inventory of the articles seized from Mr. Hooper, when Mr. Whitlow was required to depart. Mr. Childers said that Mr. Whitlow had listed on Mr. Hooper's copy of the search warrant a quantity of containers without specifying the respective numbers of jugs which were plastic and glass; and that he retrieved such copy from Mr. Hooper's shirt-pocket and, in the presence of the commissioner, obtained Mr. Hooper's permission to take the copy for the purpose of checking the accuracy of the articles listed thereon with Mr. Whitlow and to return it to Mr. Hooper by registered mail. Oddly, Mr. Childers undertook to explain the reason underlying his denial of his previous inconsistent statement by testifying Mr. Hooper was not given a receipt for the articles seized at the time of seizure, " * * * because I had gotten it back from him. * * *"

Mr. Whitlow testified that he prepared an inventory of the property seized from Mr. Hooper's premises at the scene of the raid on a scratch pad in the presence of both Messrs. Hooper and Childers; that he made no entry whatever on the copy of the warrant to be left with Mr. Hooper and gave him no receipt for the property seized at the scene of the raid; that he and Mr. Childers had commenced listing from his (Mr. Whitlow's) notes the items seized from Mr. Hoopers' premises afterward at the commissioner's office, and when he departed, he left Mr. Childers in charge of completing this function; that he gave Mr. Hooper no receipt at any time; that he was not present when any listing of the seized articles was presented to Mr. Hooper; and that he was not present when Mr. Childers retrieved the warrant from Mr. Hooper's person.

The officers dispossessing Mr. Hooper of the property taken under this warrant were required to give Mr. Hooper a copy of the warrant and a receipt for the property taken at the scene of the raid. They were then required to make promptly a return of the warrant to the commissioner, accompanied by a written inventory of the property taken, made and verified in the presence of both Messrs. Hooper and Childers. Upon request of Mr. Hooper, the issuing commissioner was required to deliver a copy of the inventory to Mr. Hooper. Rule 41(d), Federal Rules of Criminal Procedure.

■ The failure of the seizing officers to comply with these requirements did not invalidate the reasonable search of Mr. Hooper's property, Evans v. United States, C.A.6th (1957), 242 F.2d 534, 536 [5], certiorari denied (1957), 353 U. S. 976, 77 S.Ct. 1059, 1 L.Ed.2d 1137. A reasonable search had already been conducted and concluded before the occasion

arose for the raiding officers to follow the foregoing procedures. This is not to be understood, however, as placing any sanction whatever on the evident discrepancies in the testimony of Mr. Childers nor the failure of Messrs. Childers and Whitlow to follow *strictly* the procedures of Rule 41(d), Federal Rules of Criminal Procedure.

■■■ The Fourth Amendment to our federal Constitution did not require these officers to delay execution of the search warrant for Mr. Hooper's premises, if a delay would have been reasonably calculated to endanger gravely their lives or the lives of others. *Cf.* Warden, Maryland Penitentiary v. Hayden (1967), 387 U.S. 294, 298–299, 87 S.Ct. 1642, 18 L.Ed.2d 782, 787 [5]. At the same time, the fact that these persons were commissioned officers and armed with a warrant to enter upon Mr. Hooper's premises conferred on them no exemption from the mandates of the Constitution and laws of this nation or the established rules for proceeding in executing and returning the warrant. Courts which always have been, and must be, jealous of an individual citizen's right to privacy within the broad sweep of the Fourth Amendment, will not countenance searches and seizures which, under the total atmosphere of the case—the facts and circumstances presented by the evidence—are unreasonable. United States v. Rabinowitz (1950), 339 U.S. 56, 66, 70 S. Ct. 430, 94 L.Ed. 653, 660.

Mr. Childers and his fellow officers approximated the outer limits of reasonableness in executing this warrant. Their tactics impress this Court as being of a more strong-arm nature than warranted by the facts and circumstances: The officers were not authorized by the search warrant to search the person of Mr. Hooper. They had information that he was committing a felony on his premises and could have arrested him on the basis of that information, but they did not arrest him on that basis. There appears to have been no authority here for the officers to have arrested Mr. Hooper and search his person until after contraband had been discovered on his premises.

■■■ The restraint of Mr. Hooper and restriction of his liberty of movement constituted an arrest, United States v. Souther, D.C.Tenn. (1962), 211 F. Supp. 848, 851, but not a lawful arrest justifying a search of Mr. Hooper's person as an incident thereto. Parker v. State (1941), 177 Tenn.* 380, 383–384 (1), (2), 150 S.W.2d 725. Several strong and youthful officers participated in this raid. If they had previous information that Mr. Hooper would be armed, it seems that the investigators so closely guarding Mr. Hooper could have intervened physically, if it became necessary, to prevent Mr. Hooper's either interfering with the conduct of the search or harming anyone in the raiding party.

Plainly there was no reason for the investigators not to serve the warrant on Mr. Hooper by reading it to him before commencing their search. The contraband appears to have been so situated that it was not apt to be destroyed or spirited-away quickly. And, although standing alone, the following incident might not be censurable, under the total atmosphere surrounding this case, the attitude of Mr. Childers' in, admittedly, physically retrieving Mr. Hooper's copy of the warrant from his pocket is condemned. Asking the defendant to re-deliver it to him was Mr. Childers' proper course.

More seriously, however, the Court is disturbed concerning the gap demonstrated in Mr. Childers' credibility as a witness. He testified under oath before this Court that Mr. Hooper was given "* * * an entire receipt * * *

---

* In the absence of the controlling federal standards, the lawfulness of this search is determined by the law of Tennessee. United States v. Williams, C.A.6th (1965), 351 F.2d 475, 477 [2], where a precautionary search of a narcotic violater's person for weapons, after (apparently) discovery of contraband on his premises, was approved.

on the back of his copy of the warrant * * * as soon as the property was seized. * * *" He denies having testified earlier, also under oath, before the commissioner that no receipt was given Mr. Hooper at the time of the search, but that a certified copy of it was mailed to Mr. Hooper afterward. The weight to be accorded his denial of this self-contradiction is lightened virtually to nothingness by the sworn testimony of Mr. Whitlow, whose credibility as a witness is not in issue, to the effect that Mr. Hooper was given no receipt and no entries were made on his copy of the warrant from Mr. Whitlow's inventory at the scene of the raid. Zealousness in law enforcement is commended, but unbridled zeal can lead him into paths of unrighteousness!

Nonetheless, in totality the search and seizure herein were not unreasonable, and the defendant's motion to suppress evidence of the contraband siezed from him on his premises hereby is

Denied.