**UNITED STATES of America,**
**Plaintiff,**

v.

**Cleona HOOPER and Clayton Williamson,**
**Defendants.**

**Crim. No. 7072.**

United States District Court
E. D. Tennessee,
Northeastern Division.

Nov. 20, 1969.

W. Thomas Dillard, Asst. U. S. Atty., Knoxville, Tenn., for plaintiff.

Dale Quillen, Nashville, Tenn., for defendant.

### MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

Aggrieved by a seizure from his back porch of contraband liquor, the defendant Mr. Hooper has moved the Court to suppress such contraband for use as evidence herein on the ground that it was seized illegally without a warrant. Rule 41(e) (1), Federal Rules of Criminal Procedure. Evidence was received on the issues of fact necessary to the decision of the motion on June 20, 1969. Final briefs were filed on September 12, 1969.

The search and seizure were accomplished on February 25, 1969 at the residence of Mr. Hooper near the elementary school at Cosby, Tennessee. Mr. Hooper testified that he had been away from his community all that day; that when he returned home at approximately 5:00 o'clock, p. m., he saw an automobile parked off his driveway in his front yard, some 15 feet from his dwelling house, and about 25 feet from the Cosby-Newport highway; that he recognized as its occupants his codefendant Clayton ("Peawoody") Williamson, and a man whom he had met previously and had since learned was William M. Reece, a special investigator of the alcohol, tobacco & firearms division of the Internal Revenue Service, Treasury Department; that he had neither invited either of these visitors to his home nor given them permission to come there; that, after an interchange of greetings among them, without further conversation, he proceeded to his rear porch; that both his visitors did likewise, one of them parking the visiting automobile with its trunk next to this porch; that he noticed some cartons on the porch which were not there when he had left that morning and about which he knew nothing; that Mr. Reece made

some inquiry or comment in connection with the quality " * * * of the whiskey * * *"; and that, when his visitors opened the trunk-lid of the visiting automobile to load the cartons into the vehicle, special AT&FD investigators Charles Riddle and Steve B. Whitlow, who were concealed therein, emerged therefrom and placed him and his codefendant Mr. Williamson under arrest for unlawfully possessing tax unpaid whiskey.

Nothing more appearing, under such testimony, it is evident that these officers intruded upon the privacy of Mr. Hooper's residential premises, arrested him without probable cause, and seized contraband discovered on the porch of his home in contravention of his right against unreasonable searches and seizures as guaranteed him by the Fourth Amendment to the federal Constitution. United States v. Cook, D.C.Tenn. (1962), 213 F.Supp. 568, 571 [1–4], [5], 571–572 [6, 7]. Accordingly, resort must be had to the particular facts preceding such entry, United States v. Souther, D.C.Tenn. (1962), 211 F.Supp. 848, 851 [2], to determine whether probable cause existed, justifying the raiding officers in arresting the defendant Mr. Hooper without a warrant, searching the cartons on his back porch, and seizing the contraband found therein, i. e., warranting a prudent person of reasonable caution in believing that an offense was being committed. Rios v. United States (1960), 364 U.S. 253, 261, 80 S.Ct. 1431, 4 L.Ed.2d 1688, 1693 [6].

The three officers, viz., Messrs. Riddle, Whitlow and Reece, were investigating violations of the federal internal revenue laws relating to liquor in Cocke County, Tennessee (of which Cosby is a most distinctive part for these purposes) and its environs. Mr. Reece was working in an undercover capacity, and Mr. Riddle supervised his work. The latter had obtained a warrant for the arrest of the defendant Mr. Williamson for an alleged earlier offense.

On the day before the raid herein, Mr. Reece had arranged with Mr. Williamson for the purchase of 90 gallons of tax unpaid whiskey. When this information was communicated to Messrs. Riddle and Whitlow, it would have been sheer folly for Mr. Riddle to have served the arrest warrant upon Mr. Williamson until the outcome of Mr. Reece's agreed transaction was determined. As Mr. Reece had no information concerning the place the whiskey he was purchasing would be delivered to him, it was decided by the investigators that Messrs. Riddle and Whitlow would conceal themselves in the vehicle Mr. Reece was to drive the next day. Thus, the officers could apprehend Mr. Williamson and whoever else might be implicated in any further law violation and simultaneously be available to protect Mr. Reece, if his undercover status became known to the suspected violaters.

Messrs. Reece and Williamson met the next day in Newport, Tennessee in furtherance of their agreed transaction. Mr. Williamson directed Mr. Reece over the route to the point of delivery, known to Mr. Williamson but not to Mr. Reece. Pursuant to such directions, Mr. Reece stopped his vehicle twice: once for the installation thereon of overload-springs, and another time for Mr. Williamson to purchase paper bags for use in packaging the immediate containers of the liquor about to be delivered. While Mr. Williamson was out of the car on these occasions, Mr. Reece relayed to his concealed fellow-officers whatever information he had acquired since their most recent communication theretofore.

After the second stop, Mr. Williamson caused Mr. Reece to stop a third time and assumed the driving duties, in order that Mr. Reece might count-out to him the purchase money. Mr. Reece was advised that *the liquor would be delivered to him in cartons.* On arriving at his destination (i. e., Mr. Hooper's home), Mr. Williamson again departed the vehicle and conversed with a female in the Hooper dwelling, while Mr. Reece described aloud the scene. The concealed officers assumed therefrom that Mr.

Williamson had brought Mr. Reece to the Cleona Hooper residence.

On his return to the car, Mr. Williamson announced to Mr. Reece that "* * Cleona * * *" was not at home but was expected momentarily. From his position in the automobile, Mr. *Reece could see cartons* stacked on the rear porch of the dwelling. He inquired of Mr. Williamson "* * * if *that* was *the* whiskey * * *", and Mr. Williamson replied in the affirmative. The sum total of the knowledge acquired by Mr. Reece to, and including, this juncture would have warranted any prudent man of reasonable caution in believing that the occupant of this building was in the unlawful constructive possession, jointly with Mr. Williamson, of tax unpaid whiskey—a misdeameanor—; that delivery of the liquor theretofore purchased and paid for by Mr. Reece was to be made to him *at* that place; and that Messrs. *Williamson and "Cleona"* were engaging in a common unlawful plan.

That the defendant Mr. Hooper was the "* * * Cleona * * *" to whom Mr. Williamson had referred earlier, and was the person engaged in the commission of the offense by common plan with Mr. Williamson, were facts made to appear more fully when Mr. Hooper arrived on the scene. After Messrs. Hooper and Williamson conversed briefly, it was Mr. Hooper who preceded the vehicle, as Mr. Williamson drove it to the rear of the dwelling and directed its movement into the aforedescribed position at the porch.

Both the visible occupants of the car then alighted therefrom and joined Mr. Hooper on the porch. Mr. Reece removed from one of the *cartons* one jar, stating he wanted to check the quality of the liquor before it was loaded into his car. Mr. Hooper assured him it was "* * * good. * * *" After further general conversation, in which Mr. Reece advised Mr. Hooper that he had sufficient funds to buy only nine cases, and Mr. Hooper had stated there were 15 cases present, Mr. Williamson insisted that the liquor be loaded into the automobile. Whereupon, Mr. Reece unlocked the trunk of the vehicle, and the aforementioned arrests were made.

Mr. Hooper was taken immediately from the scene, and the remaining officers conducted a general search of the area, including a small outbuilding behind the barn, a 1960-model automobile parked near the driveway, and a junked automobile at the rear of the premises. In each place they discovered materials which would have constituted materials intended for use in violating the federal liquor laws. By supplementary motion, Mr. Hooper complains further of this post-arrest search of his premises.

■ The after-arrest generalized search of the premises of Mr. Hooper was unreasonable and violated his Fourth Amendment constitutional rights. "* * * When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. * * * In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. * * * *There is ample justification*, therefore, *for a search of* the arrestee's person and the area 'within his immediate control'—construing that phrase to mean *the area from within which he might gain possession of a weapon or destructible evidence*. [Emphasis supplied.]

"There is no comparable justification, however, for routinely searching * * *. Such searches, in the absence of well-recognized exceptions,[1] may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth

---

1. None of which is applicable here.

Amendment requires no less. * * *"
Chimel v. California (1969), 395 U.S.
752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d
685, 694 [4], overruling at pages 696–
697, Harris v. United States (1947), 331
U.S. 145, 67 S.Ct. 1908, 91 L.Ed. 1399,
and United States v. Rabinowitz (1950),
339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.

The post-arrest search of Mr. Hoop-
er's mobile and immobile automobiles
and his outbuilding went far beyond his
person, that of Mr. Williamson, and the
area within which either might have ob-
tained a weapon or were in a position to
have destroyed evidence that could have
been used against them. In so far as
Mr. Hooper is concerned, these explora-
tions were made after he had been taken
from his home. There was no constitu-
tional justification, in the absence of a
search warrant, for the investigators'
extending the search beyond the porch.

■ The only remaining issue is
whether the officers made an unauthor-
ized physical penetration onto the curti-
lage of Mr. Hooper, and there obtained
information providing probable cause
for his arrest and seizure of evidence
for use against him and Mr. Williamson
at their subsequent trial. Conceding
that the investigators actually intruded
a constitutionally protected area, Silver-
man v. United States (1961), 365 U.S.
505, 512, 81 S.Ct. 679, 682, 5 L.Ed.2d
734, 739, this determination turns on the
question of whether Mr. Hooper had
given his implied consent to such pene-
tration.

There is evidence here from which the
reasonable inference may be drawn that
Messrs. Williamson and Hooper had as-
sociated themselves together knowingly
to carry out a common plan or arrange-
ment, with the intent knowingly to sell
unlawfully 90 gallons of tax unpaid
whiskey, *before* Mr. Williamson know-
ingly brought their customer Mr. Reece
to the Hooper premises. The member-
ship therein of both of these defendants

is established, respectively, by evidence
of what each such defendant, himself,
knowingly did and said; and the know-
ing participation of each respective de-
fendant, in the plan or arrangement,
with the intent to advance or further
some intended object or purpose of the
plan or arrangement, is likewise estab-
lished by the evidence. Thus, the act of
Mr. Williamson in knowingly bringing
Mr. Reece upon the premises of Mr.
Hooper, in the absence of Mr. Hooper,
(even without the latter's knowledge)
during the continuance of this common
plan or arrangement, and in furtherance
of an intended object or purpose of the
plan or arrangement, was the act of his
partner Mr. Hooper, United States v.
United States Gypsum Co. (1948), 333
U.S. 364, 393, 68 S.Ct. 525, 92 L.Ed. 746,
765 (headnote 4), and constituted con-
sent of Mr. Hooper for Mr. Reece to be
thereupon.

■ While it is obvious that Messrs.
Riddle[2] and Whitlow were not on Mr.
Hooper's premises with his consent, nei-
ther of them acquired any knowledge or
information, as a result of their trespass
thereupon, which formed any basis for
their arresting these defendants. It was
Mr. Reece who acquired such knowledge,
and it was he who was then authorized
to arrest Mr. Williamson, and after the
appearance of " * * * Cleona * * * ",
to arrest Mr. Hooper. Certainly,
Messrs. Whitlow and Riddle cannot be
faulted for assisting Mr. Reece in ef-
fecting these arrests and in preventing
the destruction of the evidence of the
crime which Mr. Reece had obtained.

■ From all which the Court con-
cludes that the knowledge available to
Mr. Reece was sufficiently strong to
have supported the issuance of a war-
rant for Mr. Hooper's arrest, Worthing-
ton v. United States, C.A. 6th (1948),
166 F.2d 557, 565 [10], and, therefore,
provided him with probable cause to ar-
rest Mr. Hooper without a warrant,

2. The equally interesting point of whether
Mr. Riddle was properly on the premises
of Mr. Hooper to serve the arrest war-

rant in his possession upon Mr. William-
son, is safely pretermitted.

Henry v. United States (1959), 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134, 138–139 [4–6]; 26 U.S.C. § 7608, cited in United States v. Barnett, et al., D.C. Tenn. (1967), criminal action no. 6947, this district and division (unpublished), and that the seizure of the liquor as evidence of the crime was incidental to such lawful arrest, Agnello v. United States (1925), 269 U.S. 20, 30, 46 S.Ct. 4, 70 L.Ed. 145, 148. To the extent that it relates to the liquor on Mr. Hooper's porch, accordingly, his motion to suppress evidence of this contraband hereby is denied.

As it relates to the fruits of the post-arrest search and seizure, however, Mr. Hooper's motion to suppress hereby is granted. The property seized, not being subject under this record to lawful detention, those items listed in count two of the indictment herein will be restored to Mr. Hooper. Rule 41(e), Federal Rules of Criminal Procedure. Unless the prosecution has other evidence to support the charges contained in that count, it should be forthwith dismissed on motion of the United States attorney.