**UNITED STATES of America,**
**Plaintiff,**

v.

**Edna Marie Seagroves NUNLEY,**
**Defendant.**

**Crim. A. No. 1507.**

United States District Court,
E. D. Tennessee,
Winchester Division.

Aug. 1, 1972.

See also D.C., 369 F.Supp. 171, 173.

———◇———

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., Lloyd Stanley, Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff.

B. Stewart Jenkins, Chattanooga, Tenn., for defendant.

**MEMORANDUM OPINION AND ORDER**

NEESE, District Judge.

Aggrieved by an allegedly unlawful search of her husband's automobile, which she was operating, and seizure therefrom of contraband whiskey, the defendant Mrs. Edna Marie Seagroves Nunley moved the Court to suppress for use as evidence such contraband, on the ground that the property was illegally seized without a warrant. Rule 41(e), Federal Rules of Criminal Procedure. Prior to trial herein, the Court received evidence on the issues of fact necessary to the decision of the motion. *Idem.* For purposes of trial, the Court overruled the motion tentatively, pending more study of the legal principles involved but kept the matter under advisement for purposes of final disposition.

At about 11:00 o'clock, p. m., September 17, 1971,* Mr. Don Earle, an agent

---

* The officers herein used Eastern Time in their testimony, although the offenses actually occurred in the Central Time zone (one hour earlier).

of the Tennessee alcohol beverage commission, received information that the defendant Mrs. Nunley would be transporting a quantity of tax-unpaid whiskey into Winchester, Tennessee via the highway traversing Sewanee mountain in a white 1967 4-door Chevrolet Biscayne automobile bearing 1971 Tennessee license tags no. 71–C–720, with another woman and some children as passengers therein, at about either 8:00 o'clock a. m., or 6:00 o'clock, p. m., the following day. Mr. Earle had known his informant for some 15 years and had received information from the same source over a period of about nine months on matters which had always proved to be accurate and reliable.

The next morning Mr. Earle and fellow law enforcement officers began a surveillance of this roadway. Mr. Earle was positioned at the top of Sewanee mountain near the Town of Sewanee, Tennessee, and his fellow officers were positioned at or near the bottom of the mountain, a few miles away. At about 6:15 o'clock, p. m., the following day, Mr. Earle saw a white 1967 4-door Chevrolet Biscayne automobile bearing license tags no. 71–C–720 pass his vantage point on such roadway. Mrs. Nunley was operating such vehicle, and there were another adult female person and some children riding therein as passengers. Mr. Earle pursued such vehicle, bringing it to a stop with the use of his blue lights and siren near the bottom of the mountain.

The officers identified themselves as such to Mrs. Nunley, asked her to alight from the vehicle, told her they wished to conduct a search thereof, and requested the key to the trunk. Mrs. Nunley replied that she did not have such key. The officers then searched the vehicle and the pocketbooks of Mrs. Nunley and her mother (who was the other adult passenger in the vehicle) unsuccessfully for such key. They then requested Mrs. Nunley again to produce the key. She replied that she did not have the key; that her husband had a key to such trunk; and that she would

be glad to call him by telephone and have him bring such key to the scene.

The officers then removed the rear seat of the vehicle and saw in the trunk several one-gallon plastic jugs of the type known to the officers to be utilized in the area for transporting tax-unpaid whiskey in gallon-lots. They were unable to reach these jugs and again sought unsuccessfully to obtain a key to the trunk of the vehicle from Mrs. Nunley. Thereupon, the officers forced open such trunk, by cutting around the locking portion with an ax and forcing the lock open. They discovered 15 gallons of tax-unpaid whiskey in the trunk of the vehicle.

This Court is bound by two particular decisions of the Supreme Court which appear to control the decision of the motion. The first of those relates to the making of an arrest on the basis of information received from a reliable informant. Therein, a government agent (Marsh) was given information by an informer (Hereford) who had proved reliable in the past that the defendant (Draper), who was unknown to the agent, would alight from a certain train on either of two days, wearing certain clothing, and carrying a tan zipper bag, and would be walking fast and carrying narcotics. The late Mr. Justice Whittaker said for the Court, *inter alia:*

> \* \* \* \* \* \*
>
> \* \* \* Nor can we agree with petitioner's second contention that Marsh's information was insufficient to show probable cause and reasonable grounds to believe that petitioner had violated or was violating the narcotic laws and to justify his arrest without a warrant. The information given to narcotic agent Marsh by "special employee" Hereford may have been hearsay to Marsh, but coming from one employed for that purpose and whose information had always been found accurate and reliable, it is clear that Marsh would have been derelict in his duties had he not pursued it. And when, in pursuing that information, he saw a man, having the exact

physical attributes and wearing the precise clothing and carrying the tan zipper bag that Hereford had described, alight from one of the very trains from the very place stated by Hereford and start to walk at a "fast" pace toward the station exit, Marsh had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified; Marsh had "reasonable grounds" to believe that the remaining unverified bit of Hereford's information—that Draper would have the heroin with him—was likewise true.

"In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brineger v. United States, supra, 338 U. S. [160] at page 175, 69 S.Ct. [1302] at page 1310 [93 L.Ed. 1879.] Probable cause exists where "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Carroll v. United States, 267 U. S. 132, [162,] 45 S.Ct. 280, 288 [69 L.Ed. 543.] * * *

Draper v. United States (1959), 358 U. S. 307, 312, 313, 79 S.Ct. 329, 333 [5–7], 3 L.Ed.2d 327. The analogy between *Draper* and the case *sub judice* is remarkable, the only difference of moment being that Mr. Earle's informant was not employed for the purpose of giving the officers information. When the very automobile previously described came along the precise route predicted with the defendant driving it and the predicted passengers therein, Mr. Earle

had personally verified every facet of the information given him by his informant except whether tax-unpaid whiskey was being transported in the vehicle. With every other bit of information being thus verified, Mr. Earle had reasonable grounds to believe that the remaining unverified bit of his informant's information—that Mrs. Nunley would have tax-unpaid whiskey in this car—was likewise true. Thus, it appears that, under the facts and circumstances here, the agent Mr. Earle had probable cause and reasonable grounds to believe that the defendant Mrs. Nunley was committing a violation of the laws of the United States relating to distilled spirits at the time the officers restrained the defendant and restricted her liberty of movement. When that occurred, for the purposes of this case, the arrest was complete. United States v. Souther, D.C.Tenn. (1962), 211 F.Supp. 848, 851, citing Henry v. United States (1959), 361 U.S. 98, 80 S.Ct. 168, 171, 4 L.Ed.2d 134, 139.

The remaining consideration is whether, after immobilizing the vehicle which Mrs. Nunley was driving, the arresting officers were required to obtain a search warrant before searching it. This matter appears to be foreclosed by the second aforementioned utterance of our highest Court. It has been stated by Mr. Justice White for the Supreme Court, *inter alia:*

\* \* \* \* \* \*

* * * As a general rule, it [the Supreme Court] has also required the judgment of a magistrate on the probable-cause issue before a search is made. * * *

Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the "lesser" intrusion is permissible until the magistrate authorizes the "greater." But which is the "greater" and which the "lesser" intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For

constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment.

\* \* \* \* \* \*

Chambers v. Maroney (1970), 399 U.S. 42, 51–52, 90 S.Ct. 1975, 1981 [6, 7], 26 L.Ed.2d 419. Of course, having made a valid arrest of Mrs. Nunley, the officers had probable cause to search immediately the vehicle she had been operating as an incident thereto. Coolidge v. New Hampshire (1971), 403 U.S. 443, 458–460, 91 S.Ct. 2022, 2033–2035 [10], [11], 29 L.Ed.2d 564. (Per Mr. Justice Stewart with three Justices concurring and one Justice concurring in the judgment.)

The motion of the defendant to suppress the evidence of the contraband whiskey herein hereby is denied. The defendant was given a continuing objection to the introduction of such evidence without making further objection during the trial.

See also D.C., 369 F.Supp. 168, 173.